1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   BERNARD LUJEAN WILDEE

11                    Petitioner,              No. CIV S-07-0163 GEB DAD P

12        vs.

13   WARDEN FELKER, et al.,

14                    Respondents.             FINDINGS & RECOMMENDATIONS

15   _____/

16              Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas

17   corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction entered

18   against him on June 16, 2005 in the Sacramento County Superior Court on charges of felon in

19   possession of a firearm, unlawfully possessing a concealed firearm, and unlawfully possessing a

20   loaded firearm.  He seeks relief on the grounds that: (1) the trial court erred in denying his

21   suppression motion, (2) there was insufficient evidence to support his conviction, (3) his trial

22   counsel rendered ineffective assistance, (4) the arresting officers made false reports, (5) a prior

23   conviction of his is invalid, (6) the trial court erred in refusing to dismiss a prior strike, (7) the

24   trial court failed to award him appropriate presentence conduct credits, and (8) petitioner's

25   /////

26   /////

1

1  sentence violates the Eighth Amendment.  Upon careful consideration of the record[1] and the

2  applicable law, the undersigned will recommend that petitioner's application for habeas corpus

3  relief be denied.

4                          PROCEDURAL BACKGROUND

5          On June 16, 2005, a jury convicted petitioner of being a felon in possession of a

6  firearm in violation of California Penal Code §12021(a)(1), unlawful possession of a concealed

7  firearm in violation of California Penal Code §12025(b)(6), and unlawful possession of a loaded

8  firearm in violation of California Penal Code §12031(a)(2)(F).  (CT 218-223; Resp'ts' Lodged

9  Doc. No. 4 at 2.)  The jury also found petitioner to have suffered two prior serious felony

10 convictions for violations of California Penal Code §§667(b)-(i), 1170.12, and 1192.7(c) and to

11 have served a prior prison term.  (Id.)  On August 31, 2005, the trial court sentenced petitioner to

12 state prison for three terms of twenty-five years to life plus one year for the prior prison term

13 enhancement.  (CT 252-253; Resp'ts' Lodged Doc. No. 4 at 2.)  It stayed the sentences in counts

14 two and three pursuant to California Penal Code §654.  (Id.)  The superior court awarded

15 petitioner 56 days of presentence conduct credit.  (Id.)

16         Petitioner appealed his judgment of conviction and on December 14, 2006, the

17 California Court of Appeal for the Third Appellate District modified the judgment to award

18 defendant 140 days of presentence conduct credit and affirmed the judgment as modified.

19 (Resp'ts' Lodged Doc. No. 4 at 25.)  On March 28, 2007, the California Supreme Court denied

20 petitioner's petition for review.  (Resp'ts' Lodged Doc. No. 6).

---

22         [1] On August 8, 2007, respondents' counsel lodged the briefs and decisions from
23 petitioner's appeal and from the habeas corpus proceedings in the state superior, appellate, and
   supreme courts.  Each of those documents is identified herein with the document number
24 assigned it by respondents as "Resp'ts' Lodged Doc. No. #."  At the court's request, on
   September 10, 2009, respondents' counsel lodged the Clerk's Transcript on Appeal, the Clerk's
25 Supplemental Transcript on Appeal, the Reporters' Transcript on Appeal, and the Reporters'
   Supplemental Transcript on Appeal.  Those records are identified herein as the "CT," "CT
26 Supp.," "RT," and "RT Supp.," respectively.  Page references to documents created by petitioner
   refer to consecutive pagination of the document.

1          On February 23, 2006, petitioner filed a habeas petition with the Sacramento

2  County Superior Court (case number 06F01908) claiming: (1) the trial court erred in denying his

3  motion to suppress evidence, (2) the trial court erred in failing to instruct the jury on "corpus

4  delicti" and "mere presence," (3) the prosecutor engaged in misconduct during trial, (4) the trial

5  court erroneously read the allegations of petitioner's prior strike convictions to the jury, (5) there

6  was insufficient evidence admitted to support the conviction, and (6) counsel was ineffective.

7  (Resp'ts' Lodged Doc. Nos. 7 and 8.)  On April 26, 2006 the  Sacramento County Superior Court

8  dismissed petitioner's first five claims for lack of jurisdiction since "these claims may have been

9  raised in the pending appeal." (Resp'ts' Lodged Doc. No. 8 at 1.)  The court rejected petitioner's

10  claims of ineffective assistance of counsel on the merits .  (Id. at 2-5.)  On May 2, 2006, the

11  Superior Court denied petitioner's motion for reconsideration.  (Resp'ts' Lodged Doc. No. 9.)

12          On May 11, 2006, petitioner filed a habeas petition with the California Court of

13  Appeal for the Third Appellate District (case number CO52598) claiming: (1) the trial court

14  abused its discretion by failing to grant his suppression motion, (2) trial counsel was ineffective

15  by failing to separate the strike findings from trial and failed to object to introduction of evidence

16  of the strikes before petitioner testified at trial, (3) the evidence was insufficient to support the

17  conviction, (4) the trial judge was biased, and (5) his counsel in a prior strike case provided

18  ineffective assistance.  (Resp'ts' Lodged Doc. No. 10 at 3.)  On May 18, 2006, the Court of

19  Appeal summarily denied the petition.  (Resp'ts' Lodged Doc. No. 11.)

20          On June 12, 2006, petitioner filed a petition for writ of habeas corpus in the

21  California Supreme Court (case number S144202)  claiming: (1) the trial court abused its

22  discretion when it denied his suppression motion, (2) counsel was ineffective, (3) the trial court

23  erred in failing to dismiss a prior strike conviction, (4) his sentence was cruel and unusual, (5)

24  the trial court erred in failing to instruct the jury at his trial on "corpus delicti" and "mere

25  presence," (6) the trial prosecutor committed misconduct, and (7) his counsel in a prior strike

26  case was ineffective.  (Resp'ts' Lodged Doc. No. 12.)  On January 17, 2007, the California

1   Supreme Court summarily denied the petition. (Resp'ts' Lodged Doc. No. 13.)

2           On January 25, 2007, petitioner filed a federal habeas petition with this court.  On

3   May 15, 2007, the Court dismissed the petition, with leave granted to file an amended petition.

4   On June 11, 2007, petitioner filed an amended petition, upon which this action is proceeding.  On

5   August 8, 2007, respondents filed an answer.  On August 16, 2007 petitioner filed a "Reply

6   Motion" or traverse (hereafter "Reply")[2] and on August 17, 2007 filed a "Supplement Response"

7   ("Pet'r's Supp. Resp.").  In addition to these filings, the court has considered petitioner's exhibits

8   filed on May 3, 2007 ("Pet'r's Exs.") and a document filed by petitioner on March 24, 2008

9   entitled "Consideration."  See Nov. 5, 2008 Order (Doc. No. 60).

10                          FACTUAL BACKGROUND[3]

11          In the early morning hours of November 25, 2004,
        Sacramento police detained defendant Bernard Wildee and his
12      cousin LeAndrew Smith. The officers observed the two men sitting
        in a maroon Mustang on G Parkway. The car was parked about a
13      quarter of a mile from where a residential burglary had taken place
        a few minutes before. Defendant initially gave the officers his
14      Swahili name and denied he was on probation or parole. When
        questioned further by the police, defendant stated he had a "baby
15      gun" in the car, provided his true name, and admitted he was on
        parole. The officers found a loaded .38-caliber revolver under the
16      front passenger seat.

17          The arresting officers also testified at trial that petitioner told them he found the

18   gun, the gun did not belong to Smith, and the gun was under the front passenger seat, where

19   _____

20          [2]  The bulk of petitioner's "Reply" or traverse is a re-submission of the thirty-five exhibits
     that petitioner filed with the court in May 2007.

21
            [3]  The following summary is drawn from the Dec. 14, 2006 opinion by the California
22   Court of Appeal for the Third Appellate District.  (Resp'ts' Lodged Doc. No. 4 at 1-3.)  This
     court presumes that the state court's findings of fact are correct unless petitioner rebuts that
23   presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); Davis v. Woodford,
     384 F.3d 628, 638 (9th Cir. 2004).  "Clear and convincing evidence " within the meaning of
24   §2254(e) "requires greater proof than preponderance of the evidence" and must produce "an
     abiding conviction" that the factual contentions being advanced are "highly probable."  Cooper v.
25   Brown, 510 F.3d 870, 919 (9th Cir. 2007) (quoting Sophanthavong v. Palmateer, 378 F.3d 859,
     866 (9th Cir. 2004)), cert. denied, 130 S. Ct. 749 (2009).  Petitioner has not overcome the
26   presumption with respect to the underlying events.  This court will therefore rely on the state
     court's recitation of the facts.

                                        4

1  officers then found it.  The defense attempted to show that petitioner did not possess the gun.  In

2  this regard, petitioner testified he did not know the gun was in the car and never told the arresting

3  officers that he did.  (2 RT 991-992.)  Smith's girlfriend, the owner of the car, testified that she

4  placed the gun under the seat.  (2 RT 1024:23-1025:20.)  Petitioner's wife testified he did not

5  own a gun.  (2 RT 1060:19-25.)  A woman petitioner had sex with earlier that day testified that

6  she did not see him with a gun.  (2 RT 1056-1057.)  The defense also attempted to show

7  petitioner had reformed from his criminal past and would not have put himself at risk of

8  returning to jail by possessing a gun.

9                                                    ANALYSIS

10  I.  Standards of Review Applicable to Habeas Corpus Claims

11             A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

12  some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860,

13  861 (9th Cir. 1994); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.

14  Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

15  interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

16  Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

17  corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

18  (1972).

19             This action is governed by the Antiterrorism and Effective Death Penalty Act of

20  1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

21  1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

22  habeas corpus relief:

23                       An application for a writ of habeas corpus on behalf of a
                     person in custody pursuant to the judgment of a State court shall
24                   not be granted with respect to any claim that was adjudicated on
                     the merits in State court proceedings unless the adjudication of the
25                   claim -

26  /////

5

1          (1) resulted in a decision that was contrary to, or involved
an unreasonable application of, clearly established Federal law, as
2     determined by the Supreme Court of the United States; or

3          (2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the
4     State court proceeding.

5   28 U.S.C. § 2254(d).  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v.

6   Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).  If the

7   state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must

8   conduct a de novo review of a habeas petitioner's claims.  Delgadillo v. Woodford, 527 F.3d

9   919, 925 (9th Cir. 2008).  See also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc)

10  ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error

11  and that, if there is such error, we must decide the habeas petition by considering de novo the

12  constitutional issues raised.").

13          The court looks to the last reasoned state court decision as the basis for the state

14  court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  If the last reasoned

15  state court decision adopts or substantially incorporates the reasoning from a previous state court

16  decision, this court may consider both decisions to ascertain the reasoning of the last decision.

17  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  Where the state court

18  reaches a decision on the merits but provides no reasoning to support its conclusion, a federal

19  habeas court independently reviews the record to determine whether habeas corpus relief is

20  available under section 2254(d), but still defers to the state court's ultimate decision.  Himes v.

21  Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir.

22  2002).  When it is clear that a state court has not reached the merits of a petitioner's claim, or has

23  denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a

24  federal habeas court must review the claim de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th

25  Cir. 2003).

26  /////

II.  Petitioner's Claims

    A.  Denial of Suppression Motion

        Petitioner challenges the trial court's denial of his motion to suppress evidence seized in the search of the maroon Mustang.  He alleges his initial detention was unlawful because police lacked an articulable suspicion that he was involved in criminal activity.  The state appellate court fairly described the testimony presented at petitioner's suppression hearing as follows:

> At 1:16 a.m. on November 25, 2004, Sacramento Police Officers David Eagleton and Clay Quint responded to a call via dispatch that a residential burglary was in progress on Meadowgate Drive. Officers Eagleton and Quint arrived near the burglary scene at approximately 1:30 a.m., and waited briefly for a canine unit to join them.
>
> Officer Eagleton saw three Black males outside the house where the burglary was reported to be taking place. One of the suspects ran eastbound and Officer Quint gave chase. The two Black males closest to Officer Eagleton's patrol car ran north on Meadowgate. Officer Eagleton followed them and apprehended a suspect named Moore. The other suspect got away. Officer Eagleton broadcast a description of the two Black men he was chasing. One suspect was wearing a black sweatshirt or sweater and blue jeans, and the other wore a black sweatshirt and black pants. He said the suspects were running north. A few minutes later, Officer Eagleton saw a silver four-door car speed down Meadowgate with a Black male inside. Officer Eagleton put out a description of the vehicle.
>
> Officers Ryan Bullard and Joseph Bailey heard a dispatch about the foot pursuit of burglary suspects a little after 1:30 a.m., and drove to the scene. They contacted Officer Eagleton on Meadowgate Drive about 1:40 a.m. Officer Eagleton advised Officers Bullard and Bailey that one of the suspects had run southbound on Mandy Drive from Meadowgate wearing a black hooded sweatshirt and jeans.
>
> Officers Bullard and Bailey drove to G Parkway where they "saw a red parked Mustang" on the street. There were two Black males in the car. The man in the front passenger seat was wearing what appeared to be a hooded, black jacket. The Mustang was legally parked with its lights off approximately one-quarter mile from the scene of the burglary. Officer Bullard thought the two men might be involved in the burglary because of the time of night, how the passenger was dressed, and the proximity to the crime

scene.

The two officers stopped their patrol car in front of the Mustang and turned on their spotlights. With Officer Bailey providing cover, Officer Bullard approached the driver's side of the Mustang with his firearm drawn but at his side. He told the occupants to show him their hands, and they complied. When asked, the driver identified himself as LeAndrew Smith, gave his date of birth and said he was on probation. Defendant provided no identification, but told Officer Bullard his name was Zuri Askarie, gave his date of birth as August 28, 1974, and said he was not on probation or parole.

When Officer Bullard returned to the patrol car, he identified Smith in his automated system and learned he was on formal, searchable probation. Officer Bullard became suspicious when he was unable to locate anyone named Zuri Askarie in the computer system.

Officer Bullard asked Smith to step out of the Mustang, conducted a probation search, and put him in the back of the patrol car.  Bullard asked defendant to step out of the car and conducted a patdown search for weapons. When asked if he had any weapons on him, defendant replied that he had a "baby gun." He told Bullard the gun was under the front passenger seat but it did not belong to him. Officer Bullard conducted a full search of defendant, placed him in handcuffs, and set him on the sidewalk. At that point, defendant admitted his real name was Bernard Wildee and he was on parole. Officer Bailey searched the Mustang and found a handgun that was fully loaded.

Defendant testified at the suppression hearing. He explained he gave Officer Bullard his Swahili name, Zuri Askarie, which he had used since he was 18 years old. Defendant admitted he lied to police about not having identification because he was on parole. However, defendant denied saying he had a "baby gun" in the car.

The court denied defendant's motion to suppress. It found Officers Bullard and Bailey were justified in detaining defendant whom they observed with Smith at 1:30 in the morning, in a car with headlights off, away from any residences, parked on a dead-end street in close proximity to the burglary scene. The court also found there was probable cause to conduct the search once defendant gave the officers false information about his name and indicated there was a "baby gun" in the car.

(Resp'ts' Lodged Doc. No. 4 at 4-7.)

/////

1    The California Court of Appeal rejected petitioner's argument that the trial court

2   had erred in denying his motion to suppress evidence with the following analysis:

3           Under our federal and state Constitutions, a detention
    occurs if, in view of all the surrounding circumstances, a
4   reasonable person would believe he was not free to leave or
    otherwise disregard a show of police authority. (California v.
5   Hodari D. (1991) 499 U.S. 621, 627-628 [113 L.Ed.2d 690,
    697-699]; People v. Souza (1994) 9 Cal.4th 224, 229 (Souza).)
6   "[A] police officer can detain a person when the officer is aware of
    'specific and articulable facts' suggesting 'that (1) some activity
7   relating to crime has taken place or is occurring or about to occur,
    and (2) the person he [or she] intends to stop or detain is involved
8   in that activity.' [Citation.]" (People v. Limon (1993) 17
    Cal.App.4th 524, 531-532 (Limon).) When viewed alone, the fact a
9   suspect was observed at night or in a high crime area is not enough
    to justify a detention. However, such facts may establish the
10  required articulable suspicion when considered in combination
    with one or more other suspicious facts. (Souza, supra, at pp.
11  240-241.)

12          The trial court's task on a motion to suppress evidence "is
    to find historical facts, select the appropriate rule of law, and apply
13  the latter to the former to determine whether the rule so applied
    was or was not violated . . . . [A]s the reviewing court, [we] must
14  uphold the trial court's findings of fact if they are supported by
    substantial evidence." (People v. Kraft (2000) 23 Cal.4th 978,
15  1036.) We independently review the question whether the
    detention was reasonable. (Ibid.)

16
    . . .
17
            The parties agree defendant was detained within the
18  meaning of the Fourth Amendment when Officer Bullard
    approached the Mustang with his weapon drawn. The question is
19  whether that detention was justified by an articulable suspicion that
    defendant had committed a crime. (Florida v. Royer (1983) 460
20  U.S. 491, 498 [75 L.Ed.2d 229, 236]; Limon, supra, 17
    Cal.App.4th at pp. 531-532.)
21
            The record supports the conclusion the detention was
22  lawful. Around 1:40 a.m., Officers Bullard and Bailey responded to
    a dispatch concerning the foot pursuit of at least two suspects in a
23  residential burglary on Meadowgate Drive. They spoke with
    Officer Eagleton at the scene. There is disagreement on whether
24  Officer Eagleton told Officers Bullard and Bailey the suspects ran
    north or south. However, at 1:40 a.m. Officers Bullard and Bailey
25  understood that at least two Black male suspects were still on the
    run. One of the suspects was wearing a black hooded sweatshirt
26  and jeans. Two or three minutes later, Officers Bullard and Bailey

9

observed Smith and defendant, a Black male wearing a dark jacket, sitting in a car facing out of a dead-end street about a quarter of a mile from where police were investigating the burglary. Given the totality of the circumstances, we conclude Officers Bullard and Bailey acted reasonably and lawfully when they detained and questioned defendant.

(Resp'ts' Lodged Doc. No. 4 at 3-4, 7-8.)

Petitioner claims his conviction is unlawful because it was obtained by the admission into evidence of a firearm and ammunition seized in violation of the Fourth Amendment. (Am. Pet. (Doc. No. 31-1) at 4, 19-23, 68-84; (Doc. No. 31-2) at 67-73, 97-99, 112-115, 129-136; Pet'r's Exs. 1-9, 20-21, 24-25, 30-35; Reply (Doc. No. 39) at 24-27; Pet'r's Supp. Resp. (Doc. No. 41); Consideration (Doc. No 55).[4] Specifically, as described above, petitioner alleges that the police lacked legal grounds to detain him when they approached the legally parked Mustang vehicle in which he was a passenger. This claim is not cognizable in this federal habeas corpus petition.

The United States Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494 (1976). Thus, a Fourth Amendment claim can only be litigated on federal habeas where petitioner demonstrates

---

[4] The Amended Petition was so large that it was divided into two subsections of docket entry no. 31 when it was scanned into the CM/ECF system by the Clerk of the Court. The citations to the Amended Petition herein refer either to Doc. No. 31-1, the first half of petitioner's Amended Petition, or Doc. No. 31-2, the second half. Each entry is separately paginated in the court's CM/ECF system. Citations to page numbers herein refer to the consecutive pagination of each subsection of Doc. No. 31 created by CM/ECF. On May 3, 2007 petitioner filed with the court a packet of thirty-five exhibits. They are referred to herein as "Pet'r's Ex." Petitioner's Reply filed on August 16, 2007 was also quite large. It was scanned by the Clerk of the Court in three parts. The first 199 pages are identified as Doc. No. 39; the second 199 pages are Doc. No. 39-1; and the third set of 78 pages is Doc. No. 39-2. Like the Amended Petition, each entry for the Reply is separately paginated in the CM/ECF system. Citations to page numbers herein refer to the consecutive pagination of each subsection of Doc. No. 39 created by the court's CM/ECF system.

10

1  that the state did not provide an opportunity for full and fair litigation of the claim; it is

2  immaterial whether the petitioner actually litigated the Fourth Amendment claim, whether the

3  state courts correctly disposed of the Fourth Amendment issues tendered to them, or even

4  whether the state courts correctly understood the claim.  Ortiz-Sandoval v. Gomez, 81 F.3d 891,

5  899 (9th Cir. 1996); Siripongs v. Calderon, 35 F.3d 1308, 1321 (9th Cir. 1994); Gordan v.

6  Duran, 895 F.2d 610, 613 (9th Cir. 1990).

7         The record before this court establishes that petitioner had a full and fair hearing

8  in state court on his Fourth Amendment claim.  As explained above, petitioner filed a motion to

9  suppress the evidence seized during the search of the Mustang and the trial court held an

10  evidentiary hearing on that motion.  (CT 84-96; RT 4-184.)  Petitioner also challenged the

11  validity of his detention in his appeal, in his petition for review, and in his state habeas petitions.

12  (Resp't's Lodged Doc. Nos. 1 at 17-33; 3 at 2-5; 5 at 7-13; 7 at 3; 10 at 3; 12 at 3.)   In addition

13  to the California Court of Appeal's rejection of petitioner's argument on appeal described above,

14  the California Court of Appeal and the California Supreme Court reviewed and rejected

15  petitioner's arguments in his habeas corpus petitions that his rights under the Fourth Amendment

16  were violated by the search.[5]  (Resp't's' Lodged Doc. Nos. 11, 13.)   Petitioner has not shown that

17  the state failed to provide him a full and fair opportunity to litigate his Fourth Amendment claim.

18         For the foregoing reasons, this court may not consider petitioner's claim that his

19  Fourth Amendment rights were violated and he is not entitled to federal habeas relief with

20  respect to that claim.  Stone v. Powell, 428 U.S. at 494.[6]

21

22         [5]  The Sacramento County Superior Court dismissed petitioner's habeas claim regarding
   the suppression motion for lack of jurisdiction due to the pendency of petitioner's appeal.
23  (Resp't's Lodged Doc. No. 8 at 1.)

24         [6]  Petitioner makes references to "racial profiling" by the officers who detained him and
   to "bias" by the trial judge.  (Am. Pet. (Doc. No. 31-2 at 102.)  To the extent petitioner is
25  attempting to raise new claims for relief, his allegations of racial profiling and bias are too vague
   and conclusory to state cognizable habeas claims.  See Jones v. Gomez, 66 F.3d 199, 204 (9th
26  Cir. 1995) ("'[c]onclusory allegations which are not supported by a statement of specific facts do
   not warrant habeas relief'") (quoting James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)).   To the

1        B.  <u>Insufficient Evidence of Possession of a Firearm</u>

2          The jury convicted petitioner of being a felon in possession of a firearm in

3  violation of California Penal Code §12021(a)(1), unlawful possession of a concealed firearm in

4  violation of California Penal Code §12025(b)(6), and unlawful possession of a loaded firearm in

5  violation of California Penal Code §12031(a)(2)(F).  Petitioner claims the evidence introduced at

6  his trial was insufficient to support his conviction for possession of a firearm.  (Am. Pet. (Doc.

7  No. 31-1) at 4, 27-28.)  He argues that the evidence introduced at his trial showed he did not own

8  a gun and that the gun found by officers was placed there, without his knowledge, by the owner

9  of the car.  (<u>Id</u>.)

10         Petitioner did not raise this claim on appeal.  However, respondents also argue

11  that petitioner failed to raise this claim in his state habeas corpus petitions and that it is therefore

12  unexhausted.  Respondents' argument is unpersuasive.  Petitioner did raise this insufficiency of

13  the evidence claim in each of his state habeas petitions, including the petition he filed with the

14  California Supreme Court.  (Resp'ts' Lodged Doc. Nos. 7 at 3, 10 at 3, and 12 at 17-18.)   The

15  Sacramento County Superior Court dismissed petitioner's insufficiency of the evidence claim for

16  lack of jurisdiction, stating as follows: "During the pendency of an appeal, a trial court is without

17  authority to proceed on a habeas corpus proceeding for any error which was or might have been

18  legally presented to the appellate court."  (Resp'ts' Lodged Doc. No. 8 at 1.)   The California

19  Court of Appeal and California Supreme Court denied petitioner's habeas petitions without

20  opinion.  (Resp'ts' Lodged Doc. Nos. 11 and 13.)   Typically, this court would analyze the

21  Superior Court's decision as the relevant state court determination because it would be the "last

22  reasoned decision" by a state court.  <u>Avila v. Galaza</u>, 297 F.3d 911, 918 (9th Cir. 2002) (the

23  habeas court must review the "last reasoned decision" by a state court); <u>Shackleford v. Hubbard</u>,

24

25  extent petitioner makes these references in support of his Fourth Amendment claim, he had every
    opportunity to raise them during the state court proceedings in connection with his motion to

26  suppress.  In any event, these references do not change this court's conclusion that <u>Stone v.</u>
    <u>Powell</u> bars consideration of petitioner's Fourth Amendment claim.

234 F.3d 1072, 1079 n.2 (9th Cir. 2000).  However, since petitioner's appeal had concluded by the time the California Supreme Court denied his state habeas petition, the Superior Court's reasoning was not necessarily still applicable.   As discussed above, for purposes of reviewing the state court's decision under 28 U.S.C. § 2254(d), if this court considers the Superior Court's procedural ruling on petitioner's claim, then the deferential standard of review set out in section 2254(d) does not apply and this court must review the claim de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).  However, if this court considers the California Supreme Court's summary denial of petitioner's claim, then it must independently review the record to determine whether habeas corpus relief is available under section 2254(d), but still defer to the state court's ultimate decision.  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).   Under either standard of review, this court finds petitioner's claim of insufficiency of the evidence should nonetheless be rejected.

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970).  There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).  "[T]he dispositive question under Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'" Chein v. Shumsky, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson, 443 U.S. at 318).  "A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).  In order to grant the writ, the federal habeas court must find that the decision of the state court reflected an objectively unreasonable application of Jackson and Winship to the facts of the case. Id. at 1275 & n.13.

1        The court must review the entire record when the sufficiency of the evidence is

2  challenged in habeas proceedings.  Adamson v. Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985),

3  vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987).  It is

4  the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw

5  reasonable inferences from basic facts to ultimate facts."  Jackson, 443 U.S. at 319.  If the trier of

6  fact could draw conflicting inferences from the evidence, the court in its review will assign the

7  inference that favors conviction.  McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994).  The

8  relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether

9  the jury could reasonably arrive at its verdict.  United States v. Mares, 940 F.2d 455, 458 (9th

10  Cir. 1991).  Thus, "[t]he question is not whether we are personally convinced beyond a

11  reasonable doubt" but rather "whether rational jurors could reach the conclusion that these jurors

12  reached."  Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991).  The federal habeas court

13  determines sufficiency of the evidence in reference to the substantive elements of the criminal

14  offense as defined by state law.  Jackson, 443 U.S. at 324 n.16; Chein, 373 F.3d at 983.

15        Viewing the evidence in the light most favorable to the verdict, this court

16  concludes that there was sufficient evidence from which a rational trier of fact could have found

17  beyond a reasonable doubt that petitioner was guilty of possession of a firearm.   Each of the

18  charges upon which petitioner was convicted required proof of possession of a firearm.   First,

19  California Penal Code §12021(a)(1) states: "Any person who has been convicted of a felony . . .

20  who owns, or has in his or her possession or under his or her custody or control, any firearm is

21  guilty of a felony."  Second, § 12025 states in relevant part:

22        (a) A person is guilty of carrying a concealed firearm when he or
           she does any of the following:

23

24        . . . .

25           (3) Causes to be carried concealed within any
           vehicle in which he or she is an occupant any pistol,

26           revolver, or other firearm capable of being
           concealed upon the person.

(b) Carrying a concealed firearm in violation of this section is punishable, as follows:

. . . .

(6) By imprisonment in the state prison, or by imprisonment in a county jail not to exceed one year, by a fine not to exceed one thousand dollars ($1,000), or by both that fine and imprisonment if both of the following conditions are met:

(A) Both the pistol, revolver, or other firearm capable of being concealed upon the person and the unexpended ammunition capable of being discharged from that firearm are either in the immediate possession of the person or readily accessible to that person, or the pistol, revolver, or other firearm capable of being concealed upon the person is loaded as defined in subdivision (g) of Section 12031.

(B) The person is not listed with the Department of Justice pursuant to paragraph (1) of subdivision (c) of Section 11106, as the registered owner of that pistol, revolver, or other firearm capable of being concealed upon the person.

Pursuant to § 12031(g), a firearm is loaded when "there is an unexpended cartridge or shell, consisting of a case that holds a charge of powder and a bullet or shot, in, or attached in any manner to, the firearm, including, but not limited to, in the firing chamber, magazine, or clip thereof attached to the firearm."

The final charge against petitioner was brought under Penal Code §12031(a)(2)(F), which states as follows:

(a)(1) A person is guilty of carrying a loaded firearm when he or she carries a loaded firearm on his or her person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory.

(2) Carrying a loaded firearm in violation of this section is punishable, as follows:

. . . .

/////

15

1

2

3

4

5

> (F) Where the person is not listed with the
> Department of Justice pursuant to Section 11106, as
> the registered owner of the pistol, revolver, or other
> firearm capable of being concealed upon the person,
> by imprisonment in the state prison, or by
> imprisonment in a county jail not to exceed one
> year, or by a fine not to exceed one thousand dollars
> ($1,000), or both that fine and imprisonment.

6       With respect to the first charge against petitioner noted above, the trial court

7   instructed the jury that possession of a firearm was satisfied by a finding of either actual or

8   constructive possession.  Constructive possession was defined for the jury as follows:

9

10

11

> Constructive possession does not require actual possession
> but does require that a person knowingly exercise control over or
> the right to control a thing, either directly or through another
> person or persons.

12   (RT 1196:13-16; 1204:7-10.)

13       Officers Bullard and Bailey both testified at that, when asked whether he had any

14   weapons, petitioner told them, "I got a baby gun." (1 RT 760:20-22 (Officer Bullard testimony);

15   2 RT 869:12-26 (Officer Bailey testimony).)  The officers also testified that petitioner told them

16   the gun was under the front passenger seat of the car, where petitioner had been sitting.  (1 RT

17   761:24-762:1; 2 RT 869:27-28, 870:18-28.)  Officer Bullard testified that petitioner told him the

18   gun was not his and that he had found it.  (1 RT 762:2-18.)  Officer Bailey testified petitioner

19   told them that he had found the gun in a backyard and that it did not belong to Smith, the driver.

20   (2 RT 871:4-7, 874:2-7.)  Officer Bailey also testified that he retrieved the gun from under the

21   front passenger seat and discovered that it was loaded.  (2 RT 871:20-24, 872:19-873:1; 1 RT

22   767:26-28.)[7]

23

24

25

26

---

[7] Petitioner also argues that the officers' testimony should not have been considered because their testimony was the product of the illegal search and seizure.  (Am. Pet. (Doc. No. 31-1) at 27-28.)  As discussed above with respect to petitioner's Fourth Amendment claim, petitioner's arguments regarding his detention and the search of the vehicle are not cognizable in this federal habeas proceeding.

16

1    Petitioner points to his testimony in which he denied saying these things to

2    officers and to the testimony of others that the gun did not belong to him.   (E.g., Am. Pet. (Doc.

3    No. 31-2) at 94-95; Pet'r's Exs. 12, 13, 14, 15, 16, and 17.)  In particular, he points to the

4    testimony of Tiffany Carmichael that the gun did not belong to petitioner and that she placed the

5    gun in the car.  (Am. Pet. (Doc. No. 31-1 at 133 through Doc. No. 31-2) at 11 (ex. L - interviews

6    with Carmichael and transcript of her preliminary hearing testimony); Ex. 12 filed May 12, 2007

7    (transcripts of Carmichael preliminary hearing and trial testimony).)[8]  In determining whether the

8    evidence introduced at trial was sufficient to support the jury's verdict convicting petitioner,

9    however, this court must examine it in the light most favorable to the prosecution.  A reasonable

10   jury could well have found the officers more credible than petitioner's witnesses in determining

11   that the prosecution had proved beyond a reasonable doubt that petitioner placed the gun in the

12   car and had control over it.

13    For these reasons, the state court's  rejection of petitioner's insufficiency

14   argument is a reasonable construction of the evidence in this case and is not contrary to or an

15   objectively unreasonable application of federal law.  See Woodford v. Visciotti, 537 U.S. 19, 25

16   (2002); see also 28 U.S.C. § 2254(d)(1).  Accordingly, petitioner's claim that the evidence

17   introduced at his trial was insufficient to support his conviction for possession of a firearm

18   should be rejected.

19    C.  Ineffective Assistance of Counsel

20    Petitioner claims that he received ineffective assistance of counsel in several

21   respects.  It is worth noting at the outset that petitioner is unable to make the showing of

22   prejudice necessary to succeed on these claims.  As described above, the officers' testimony was

23   clear: petitioner told them he had a gun, told them it was his gun because he found it, and told

24   _____

25       [8] Petitioner also refers to testimony that fingerprints on the gun were not clear enough to
     be identified and that officers did not see him move as though he was attempting to hide the gun.
26   (Pet'r's Exs. 10 and 11.)  Neither of these points, however, persuasively supports petitioner's
     insufficiency of the evidence claim.

them the gun was under the front passenger seat of the car.  The officers also testified that they found the gun where petitioner said it would be and it was loaded.  Besides petitioner, each of the defense witnesses who testified at trial either did not contradict the officers' testimony directly, had a motive, due to his or her relationship to petitioner, to lie, and/or was impeached on cross-examination.  Petitioner has not provided, either now or at trial, any material reason to disbelieve the officers' testimony.  In light of this record, even if the errors by counsel alleged by petitioner in his ineffective assistance of counsel claims had occurred, there is no reasonable probability the outcome of his trial would have been different.  Nonetheless, below the court will address petitioner's ineffective assistance of counsel claims in detail below.

Petitioner claims his trial counsel was constitutionally deficient for the following reasons:  (1) he failed in numerous ways to limit the jury's consideration of petitioner's prior crimes; (2) he failed to inform petitioner of the risks of testifying in his own defense at trial; (3) he failed to litigate the motion to suppress to evidence; (4) he failed to request a jury instruction on "mere presence as corpus delicti;" and (5) he failed to present potentially meritorious defenses.

The Sixth Amendment guarantees the effective assistance of counsel.  The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  Id. at 687-88.  After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.  Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).

In assessing an ineffective assistance of counsel claim "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance.'"

Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 689).  There

is in addition a strong presumption that counsel "exercised acceptable professional judgment in

all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing

Strickland, 466 U.S. at 689).

> In light of "the variety of circumstances faced by defense counsel
> [and] the range of legitimate decisions regarding how best to
> represent a criminal defendant," the performance inquiry
> necessarily turns on "whether counsel's assistance was reasonable
> considering all the circumstances." Strickland, 466 U.S. at
> 688–689. At all points, "[j]udicial scrutiny of counsel's
> performance must be highly deferential." Id., at 689.

Wong v. Belmontes, ___ U.S. ___, 130 S. Ct. 383, 384-85 (2009).

Second, as noted above, a petitioner must establish that he was prejudiced by

counsel's deficient performance. Strickland, 466 U.S. at 693-94.  Prejudice is found where

"there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." Id. at 694.  A reasonable probability is "a probability

sufficient to undermine confidence in the outcome." Id.  See also Williams, 529 U.S. at 391-92;

Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not determine

whether counsel's performance was deficient before examining the prejudice suffered by the

defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an

ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be

followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at

697).

### 1.  Ineffective Assistance Re Introduction of Prior Convictions

Petitioner advances a number of claims relating to his trial counsel's decision to

allow the admission of evidence of petitioner's prior convictions and other bad acts.  Petitioner

argues his counsel was ineffective for (a) failing to object to the prosecutor's misconduct in

bringing the prior convictions to the jury's attention before petitioner testified (Am. Pet., Doc.

/////

No. 31-1 at 29-30, 95-96, and Doc. No. 31-2 at 80; Pet'r's Ex. 18),[9] (b) failing to seek a separate trial on the prior convictions (Am. Pet., Doc. No. 31-1 at 29, 92, and Doc. No. 31-2 at 78; Traverse (Doc. No. 39) at 10-11), (c) failing to object to the trial judge's mentioning of the prior convictions (Am. Pet. (Doc. No. 31-1) at 29-30; Pet'r's Ex. 19), (d) bringing in prejudicial evidence and opening the door to additional prejudicial evidence (Am. Pet., Doc. No. 31-1 at 85, 89-90, 94, 99-102, and Doc. No. 31-2 at 75-77, 79-80, 117-120; Reply (Doc. No. 39) at 8-10, 12-13), (e) failing to move to sanitize petitioner's two prior convictions involving the use of firearms (Am. Pet., Doc. No. 31-1 at 92, and Doc. No. 31-2 at 77-78; Reply (Doc. No. 39) at 10), (f) failing to seek to limit the use of his priors for impeachment (Am. Pet., Doc. No. 31-1 at 93 and Doc. No. 31-2 at 78-79; Reply (Doc. No. 39) at 11-14), (g) failing to object to the prosecutor's improper closing argument (Am. Pet. (Doc. No. 31-1 at 96-97 and Doc. No. 31-2 at 80-81; Pet'r's Ex. 23; Reply (Doc. No. 39 at 14-15), and (h) failing to request an instruction, such as CALJIC 2.50, limiting the jury's consideration of evidence of petitioner's prior bad acts (Am. Pet., Doc. No. 31-1 at 97-98 and Doc. No. 31-2 at 81; Reply (Doc. No. 39) at 15-17).

Respondents do not argue that petitioner's various ineffective assistance of counsel claims are unexhausted. Rather, they acknowledge that the claims appear to have been raised in petitioner's habeas petition before the California Supreme Court. (Ans. to Am. Pet. at 14:7-8; Resp'ts' Lodged Doc. No. 12.) Petitioner also raised these claims on appeal. (Resp'ts' Lodged Doc. No. 1 at 37-47.) To determine whether "a state court decision is contrary to federal law, we look to the state's last reasoned decision in this case . . . as the basis for its judgment." Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002) (citing Ylst v. Nunnemaker, 501 U.S. 797,

---

[9] Petitioner also argues that this prosecutorial misconduct violated his due process rights. (Am. Pet., Doc. No. 31-1 at 36.) However, the prosecutor was properly permitted to bring up petitioner's prior crimes not only to impeach petitioner but also to rebut the defense evidence of petitioner's good character. Furthermore, for the same reasons petitioner cannot show prejudice with respect to his ineffective assistance of counsel claim, he cannot show that any violation of his due process rights had a "substantial and injurious effect or influence in determining the jury's verdict." See Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996).

803-04 (1991)).  Since, as described above, the California Supreme Court and California Court

of Appeal summarily denied petitioner's habeas corpus petitions without comment, respondents

cite to the Sacramento County Superior Court's April 21, 2006 denial of the petition for writ of

habeas corpus filed by petitioner with that court as the basis for the state courts' decision.

(Resp'ts' Lodged Doc. No. 8.)  However, as noted above, the California Court of Appeal

rendered its decision affirming petitioner's conviction on appeal later that year, so it must be

considered the "last reasoned decision" of the state court for purposes of this court's analysis of

these ineffective assistance claims.  (Resp'ts' Lodged Doc. No. 4.)

The Court of Appeals analyzed petitioner's claims with respect to his trial

counsel's strategy and handling of his prior convictions as follows:

> Defendant argues he is entitled to reversal because he was deprived
> of his constitutional right to effective counsel at trial. Citing eight
> separate grounds, defendant maintains his trial attorney "pursued a
> fatally flawed strategy by placing [defendant's] character into
> issue, which opened the door to an incredible amount of highly
> prejudicial bad character and other crimes evidence being
> admitted." Defendant insists, "[t]here was no valid, rational basis
> for defense counsel's completely reckless strategy. . . ."
>
> A. What Constitutes Ineffective Assistance:
>
> The law regarding a defendant's constitutional right to effective
> assistance of counsel is well-established. (See Strickland v.
> Washington (1984) 466 U.S. 668, 684-685 [80 L.Ed.2d 674,
> 691-692] (Strickland); People v. Ledesma (1987) 43 Cal.3d 171,
> 215-218.) "[T]he question whether counsel is constitutionally
> ineffective comprises two inquiries: (1) Was counsel's
> performance deficient? and (2) was there prejudice? [Citations.]
> . . . '[I]f a defendant has failed to show that the challenged actions
> of counsel were prejudicial, a reviewing court may reject the claim
> on that ground without determining whether counsel's performance
> was deficient.' " (People v. Weaver (2001) 26 Cal.4th 876, 961
> (Weaver), quoting People v. Kirkpatrick (1994) 7 Cal.4th 988,
> 1008.) To establish prejudice, "defendant must show that there is a
> reasonable probability that, but for counsel's unprofessional errors,
> the result of the proceeding would have been different."
> (Strickland, supra, at p. 694 [80 L.Ed.2d 698].)
>
> "Reviewing courts defer to counsel's reasonable tactical decisions
> in examining a claim of ineffective assistance of counsel." (People
> v. Lucas (1995) 12 Cal.4th 415, 436.) "It is all too tempting for a

21

defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. [Citation.] A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' [Citation.]" (Strickland, supra, 466 U.S. 668 at p. 689 [80 L.Ed.2d at pp. 694-695], italics added.) At the same time, the reasonableness of counsel's decisions on tactics and strategy depends on whether those decisions were informed by adequate investigation. (In re Jones (1996) 13 Cal.4th 552, 565; see also Strickland, supra, at pp. 690-691.) Thus, "[e]ven if counsel has legitimate tactical reasons for introducing no evidence, his performance is still inadequate if evidence supporting a potentially meritorious defense remains unexplored." (In re Cordero (1988) 46 Cal.3d 161, 181.)

B. Instances of Alleged Ineffective Assistance:

1. Defense Counsel's Trial Strategy:

Defense counsel explained his trial strategy to the court and prosecutor before trial, stating, "basically, our defense is that [defendant] didn't possess the gun. He had no knowledge there was a gun in the car." The defense planned to produce: (1) the owner of the car who said she put the gun in the car; (2) defendant's parole agent who would testify he was doing everything he was supposed to do; and (3) defendant's wife who would testify he was working and had a positive attitude since getting out of prison. The broad strategy was to place defendant's character in issue by arguing that given defendant knew he had two strikes on his record, he would not have chanced committing a third strike by unlawfully possessing a gun.

On appeal, defendant maintains, "[t]rial counsel's basic trial strategy was fundamentally flawed because he intentionally opened the door to an incredible amount of highly prejudicial bad character evidence and other crimes evidence . . . ." Specifically, on direct examination, defendant acknowledged he had been convicted of murder, but the conviction was reversed by the Ninth Circuit Court of Appeals. He also acknowledged his prior membership in the Crips criminal street gang. Defendant testified that the prior felony convictions included voluntary manslaughter, assault with a firearm, and assault on a correctional officer in prison. On

22

cross-examination, the prosecutor elicited more detailed testimony regarding defendant's crimes, his conduct while in prison and in jail, and his use of alcohol on parole. Defendant also acknowledged on cross-examination that the prior murder took place in the neighborhood where he was arrested in this case, and that he had two blue bandanas in his possession at the time of his arrest. Defense counsel did not object on grounds of improper impeachment.

2. The Failure to Sanitize the Priors in Count 1:

The court read the charges to the jury at the start of trial. In count one, charging a violation of section 12021, subdivision (a)(1), felon in possession of a firearm, the court specified the prior convictions to include voluntary manslaughter, assault with a firearm and assault on a peace officer.

On appeal, defendant argues defense counsel was ineffective because he failed to move to sanitize the priors, pointing out that although the prosecution is entitled to prove the existence of a felony as an element of section 12021, subdivision (a), a defendant may stipulate to his status as a convicted felon. (People v. Valentine (1986) 42 Cal.3d 170, 173.) Defendant maintains there was "no valid tactical reason for defense counsel not moving to sanitize the priors charged in count 1 because at least one of those was an assault with a firearm, which was similar to the charged offenses here."

3. Failure to Bifurcate the Three Priors:

Defense counsel did not move to bifurcate the three prior serious and violent felony convictions alleged in the information. Nor did defense counsel object when the prosecution called, as its first witness, a deputy clerk who testified in detail about defendant's prior convictions.

On appeal, defendant argues there was no tactical reason for trial counsel not to seek bifurcation of the priors pursuant to People v. Calderon (1994) 9 Cal.4th 69, 77-78, or otherwise limit the jury's exposure to "obviously prejudicial" testimony.

4. Failure to Limit Use of Priors for Impeachment:

Defense counsel did not move to exclude or limit the use of defendant's three prior serious and violent felony convictions for purposes of impeachment pursuant to Evidence Code section 352. On appeal, defendant argues that, "[e]ven if those priors involved moral turpitude, a reasonably competent defense attorney would have moved to exclude them for impeachment purposes, or limit their number because of their similarity to the three charged offenses here that involved firearms." (See People v. Collins

23

(1986) 42 Cal.3d 378.) Defendant maintains defense counsel was obligated to exclude or limit the prosecution's use of the priors because it was "essential to his defense" that defendant testify he did not knowingly possess the firearm found underneath the passenger seat of the Mustang.

5. Evidence Regarding Defendant's Gang Affiliation:

Defense counsel questioned defendant about his affiliation with the Crips during direct examination. The prosecutor repeatedly asked defendant about his gang membership and possession of two blue bandanas during cross-examination.

On appeal, defendant argues "[g]iven that [defendant] was arrested with two blue bandannas [sic] in this case, it was completely reckless for defense counsel to admit evidence regarding [defendant's] prior gang membership." He contends that defense counsel's failure to object to cross-examination resulted in the creation of "a motive" to convict defendant "because he was a Crip who was possibly in Blood gang territory."

6. Failure to Object to Evidence of Prior Bad Acts:

The prosecutor questioned defendant about his gang membership, his prior murder conviction which was reversed, his write-ups for bad conduct in prison and jail, and his use of alcohol on parole. Defendant asserts, "[a] reasonably competent attorney would have repeatedly objected to the prosecutor's improper cross-examination . . . with other crimes evidence that was nothing more than inadmissible criminal propensity evidence."

7. Failure To Object To Improper Closing Argument:

During closing argument, the prosecutor advanced the theme that defendant was a long-time "soldier" of the Crips. He argued, "Bernard Wildee has always been a soldier. From the time he was a 29th Street Crip to the time he was involved in prison gangs, to the moment he sat out on G-Parkway with a Snub Nose revolver, . . ., just down the street or up the street from where he had committed a murder 13 years earlier, again, with a Snub Nose revolver, and he sat there with two blue rags in his pocket."

On appeal, defendant maintains defense counsel was ineffective for failing to object to the closing argument as improper. He asserts the prosecutor's argument was "blatant intentional misconduct" because it appealed to the passion and prejudice of the jury and urged the jury to find defendant guilty because of his criminal propensity and bad character.

/////

/////

24

8. Failure to Request a Limiting Instruction:

Defense counsel did not ask the court for an instruction to the jury limiting its consideration of prior bad acts, bad character and gang membership. On appeal, defendant argues "[o]nce defense counsel made the mistake of opening the door to the prosecutor's highly prejudicial cross-examination of [defendant], defense counsel was obligated to limit the damage that was already done to [defendant's] credibility."

C. Defense Counsel's Trial Strategy Was Reasonable:

Unlike many cases in which defendant raises ineffective assistance of counsel on appeal, the record in this case provides a clear picture of defense counsel's trial strategy. (See, e.g., People v. Wilson (1992) 3 Cal.4th 926, 936-937, and People v. Pope (1979) 23 Cal.3d 412, 425-426.) Here, defense counsel placed defendant's serious and extensive criminal record in front of the jury by acknowledging the prior convictions and prior bad acts and then offered evidence of how defendant had changed since his release from prison. The introduction of defendant's serious criminal record by the defense served two purposes. One, by acknowledging his record first, it lessened its impact and two, it provided the defense theory that given such a serious record, defendant would not risk reoffense. The conduct raised by defendant as proof of defense counsel's recklessness and incompetence was entirely consistent with defense counsel's trial strategy. That the jury rejected the defense theory does not mean defendant was denied effective assistance of counsel. Given defendant's record and the necessity of defendant's testimony denying the "baby gun" statement, his trial attorney had little to work with in this case.

In any event, we need not address the individual claims of ineffective assistance recited by defendant on appeal because defendant suffered no prejudice. (Weaver, supra, 26 Cal.4th at p. 961.) Defendant was lawfully detained and arrested in the early morning hours, after lying to police officers about his name and admitting there was "a baby gun" under his seat in the car. Given this record, it is not reasonably probable the result would have been different if defense counsel had employed another trial strategy. (Strickland, supra, 466 U.S. at p. 687 [80 L.Ed.2d at p. 693].)

(Resp'ts' Lodged Doc. No. 4 at 8-15.)

/////

/////

/////

The California Court of Appeal's summary of petitioner's arguments mirrors many of those set out in his pending federal habeas corpus petition.[10]   In addition, as specified above, petitioner argues here that his trial counsel erred by failing to object to the prosecutor's and trial judge's mention of his prior crimes before he testified.

As the state appellate court explained, the only way for petitioner to attempt to disprove the arresting officers' testimony that he told them he had a gun was to testify himself. Since petitioner's prior convictions would then have been admissible to impeach his testimony, it was, for defense counsel, only a question of when and how those prior convictions would come to the jury's attention.   Cf. People v. Calderon, 9 Cal. 4th 69, 78 (1994) (denial of bifurcated trial on priors not error where defendant will testify and be impeached with evidence of priors). Petitioner argues that was not necessarily the case.  He claims his trial counsel should have sought to sanitize the priors for impeachment purposes.  It is true that California courts have the discretion to "sanitize" a prior used for impeachment by allowing its use without reference to the nature of the underlying offense.  People v. Sandoval, 4 Cal. 4th 155, 178 (1992), aff'd, Victor v. Nebraska, 511 U.S. 1 (1994); People v. Massey, 192 Cal. App. 3d 819, 825 (1987).  However, evidence of past misconduct, including prior convictions, is admissible to impeach the credibility of a witness if the conduct reflects moral turpitude.  See People v. Wheeler, 4 Cal. 4th 284, 295 (1992); People v. Collins, 42 Cal. 3d 378, 389-90 (1986); People v. Castro, 38 Cal. 3d 301, 306 (1985).[11]  The standards set out by the California courts for determining the admissibility of prior

---

[10]  Petitioner has attached a copy of portions of his opening brief on appeal to his federal habeas petition.

[11]  Petitioner cites the decision in People v. Valentine, 42 Cal. 3d 170 (1986) in support of this argument.  However, the California Supreme Court in Valentine ruled only that when a defendant's ex-felon status is an element of the crime the jury must be advised that the defendant is an ex-felon but "evidence of the nature of his prior convictions still may and should be withheld from the jury."  42 Cal. 3d at 173.  Since petitioner testified, and his priors therefore could be introduced as impeachment evidence, Valentine is not applicable.  In any event, even if petitioner had not testified and the jury had not been informed about his prior crimes, petitioner has not shown a reasonable probability the result of the proceedings would have been different.

convictions for impeachment purposes are as follows:

> Subject to the trial court's discretion under [Evidence Code] section 352 [article I, section 28, subdivision (f) of the California Constitution] authorizes the use of any felony conviction which necessarily involves moral turpitude, even if the immoral trait is one other than dishonesty[, for impeachment purposes].  In determining whether to admit the prior convictions, "[t]he trial court should consider four factors outlined in [People v.] Beagle [ (1972) 6 Cal.3d 441, 99 Cal.Rptr. 313, 492 P.2d 1]: (1) whether the prior conviction reflects adversely on an individual's honesty or veracity; (2) the nearness or remoteness in time of a prior conviction; (3) whether the prior conviction is for the same or substantially similar conduct to the charged offense; and (4) what the effect will be if the defendant does not testify out of fear of being prejudiced because of impeachment by prior convictions.  The first factor goes to admissibility of the prior convictions, which determination the trial court must first reach before exercising its discretion based on the remaining factors.

People v. Green, 34 Cal. App. 4th 165, 182 (1995) (internal citations omitted).

Here, petitioner's prior crimes were voluntary manslaughter, assault with a firearm, and assault on a correctional officer in prison.  (Resp'ts' Lodged Doc. No. 1 at 38.) There is no question that these crimes involve moral turpitude.[12]   See People v. Foster, 201 Cal. App. 3d 20, 25 (1988) (voluntary manslaughter is crime of moral turpitude and may be used as impeachment); People v. Thomas, 206 Cal. App. 3d 689, 695-702 (1988) (same for assault with a deadly weapon); People v. Lindsay, 209 Cal. App. 3d 849, 857 (1989) (same for crime involving any use of force against a police officer).  The only question then, is whether they could have or should have been sanitized.  Petitioner argues that the prior convictions were too similar to the charged crime for admission because they involved the use of firearms.  However, the fact that petitioner's prior crimes involved the use of a firearm does not mean they would have been automatically excluded for impeachment purposes.  Courts must weigh the Beagle

---

[12]  Petitioner does argue that his prior crimes "have little or no bearing on one's honesty or veracity."  (Am. Pet., Doc. No. 31-1 at 35(citing Beagle, 6 Cal. 3d at 453) and 36 (citing People v. Barrick, 33 Cal. 3d 115, 123 (1982)).  However, the California Supreme Court made clear in Castro that a prior conviction that involved "moral turpitude" may be used to impeach "even if the immoral trait is one other than dishonesty."  38 Cal. 3d at 306.

factors, as well as any other relevant factors, to determine whether the prejudice of allowing the use of a prior conviction for impeachment overrides the value of the prior for impeachment purposes.  In fact, California courts have permitted impeachment with identical priors in some circumstances.  See People v. Tamborrino, 215 Cal. App. 3d 575, 588-89 (1989) (holding that the trial court did not abuse its discretion in allowing the impeachment of a defendant with two prior robbery convictions in first degree robbery case).   Here, petitioner has not shown a reasonable probability that, had his defense counsel objected to use of the priors, they would have been excluded.

As described by the California Court of Appeal, trial counsel's strategy was to acknowledge petitioner's criminal past.  All of petitioner's ineffective assistance of counsel claims before this court allege that his trial counsel should have made every attempt to limit the jury's access to evidence of petitioner's prior bad acts.[13]  (See Am. Pet., Doc. No. 31-1 at 99-103.)  The court does find petitioner's trial counsel's strategy of embracing petitioner's extensive history of bad behavior somewhat troubling.[14]   However, whether or not this strategy was a reasonable one, petitioner has not shown that he was prejudiced by the jury's knowledge of his past criminal conduct.  The gist of the case was a credibility contest between petitioner and his friends, and the police officers.  Either petitioner told the officers he had a gun, or he did not.

---

[13]  Petitioner argues that had his trial counsel investigated petitioner's criminal history more thoroughly, he would not have made petitioner's character an issue.  (Am. Pet., Doc. No. 31-2 at 94-96.)  However, the record reflects that petitioner's trial counsel was aware of petitioner's past.  See note 11, infra.  As recognized by the California Court of Appeal, his counsel's strategy was to bring out that evidence of bad character in the past to show that petitioner had changed.  Counsel's strategy also defeats petitioner's claim that the prosecutor should not have been permitted to raise the subject of petitioner's prior convictions before petitioner testified.  (Am. Pet., Doc. No. 31-1 at 30.)  In any event, even if trial counsel did err in failing to object, and to the extent petitioner is raising a due process challenge to the prosecutor's actions, petitioner has failed to show prejudice for the reasons described above.

[14]  During a sidebar discussion with the trial judge, petitioner's attorney informed the court that the defense intended to show petitioner was trying to change and would not have done anything to violate his parole.  (RT Supp. 50-52, 61-67; Pet'r's Ex. 22.)  Defense counsel even told the trial judge he did not care if additional evidence of petitioner's bad character came into evidence in light of this trial strategy.  (RT Supp. 64:12-28.)

Petitioner and his friends had an obvious incentive to lie.  In addition, Tiffany Carmichael, who testified that she placed the gun in the car, was impeached by the prosecution on cross-examination with the fact she had told different stories about how she acquired the gun.  (RT 1031-1044; 1119-1120 (testimony of investigator who took statement from Carmichael).)  Petitioner has not pointed to any material evidence impeaching the officers' credibility.[15]  On this record, it cannot be said that petitioner was prejudiced by the admission of the evidence of his prior crimes.  The court finds no reasonable probability the result of the proceedings would have been different had petitioner's trial counsel done everything possible to limit the jury's consideration of petitioner's past bad acts.  The California Court of Appeals' holding that petitioner did not suffer prejudice under <u>Strickland</u> is not contrary to or an objectively unreasonable application of federal law.[16]

2. <u>Ineffective Assistance for Failing to Inform Petitioner of Risks of Testifying</u>

It does not appear petitioner raised this claim in his appeal.  He raised it before the Sacramento County Superior Court in his habeas corpus petition.  The Superior Court's decision on this claim is thus the "last reasoned decision of the state court."  The Superior Court held that "there is no evidence that counsel did not advise Petitioner of the dangers of testifying," there is

---

[15]  In his Reply, petitioner does argue that the officers gave conflicting statements during the suppression hearing about which way the officers who responded to the burglary told them the suspects had fled.  (Reply, docket no. 39 at 2-4.)  Petitioner's trial attorney mentioned this conflicting testimony in his closing argument to the jury.  <u>See</u> n. 18, <u>infra</u>.  Any impeachment value that this conflict in the testimony may have had with respect to the officers' testimony that petitioner admitted having a gun is minimal, at best.

[16]  Petitioner cites the decision in <u>United States v. Cronic</u>, 466 U.S. 648 (1984) for the proposition that his trial counsel acted so unreasonably that this court should presume prejudice. (Am. Pet., Doc. No. 31-1 at 103-104, and Doc. No. 31-2 at 83; Reply (Doc. No. 39) at 19-20.)  In <u>Cronic</u>, the United States Supreme Court held that "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable."  <u>Id.</u> at 659. However, the Supreme Court in <u>Cronic</u> made clear that a presumption of prejudice is rare, "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt."  <u>Id.</u> at 659 n.26. Petitioner has not demonstrated that his counsel's conduct amounts to one of those extremely rare cases in which prejudice is presumed.

1  "no showing Petitioner suffered any prejudice as a result of counsel's alleged failure to advise,"

2  and "there is no evidence to support Petitioner's contention that he was coerced to testify."

3  (Resp'ts' Lodged Doc. No. 8 at 3.)

4          Petitioner advances various arguments regarding the actions of his trial counsel

5  and the decision for petitioner to testify in his own defense at trial.  In addition, petitioner

6  requests an evidentiary hearing with respect to this claim.  Specifically, petitioner argues:

7          (a) Because his trial counsel refused to seek a separate trial on his prior crimes,

8  petitioner felt he had no choice but to testify.  (Am. Pet., Doc. No. 31-1 at 29.)

9          (b) Counsel told petitioner that he "was not allowed to separate trial from strike

10  hearing."  (Am. Pet., Doc. No. 31-1 at 34.)

11          (c) No competent attorney would have allowed a client with a criminal history like

12  petitioner's to testify.  (Am. Pet., Doc. No. 31-1 at 30.)

13          (d) Counsel encouraged or coerced petitioner to testify without explaining that he

14  would be impeached with his prior crimes.  (Am. Pet., Doc. No. 31-1 at 31, 34.)

15          (e) Counsel failed to discuss the risks of testifying with petitioner.  (Am. Pet.,

16  Doc. No. 31-1 at 30.)

17          (f) Counsel erred by permitting the court and prosecutor to bring up petitioner's

18  prior crimes before he testified.  (Am. Pet., Doc. No. 31-1 at 31.)

19          As described above, petitioner's trial attorney had little choice in planning a

20  defense.  The only way to rebut the officers' trial testimony that petitioner told them he had a gun

21  was for petitioner to testify that he did not.  Petitioner makes much of the trial testimony of

22  Tiffany Carmichael, Brandy Patterson, LeAndrew Smith and petitioner's wife Danielle Wildee.

23  Carmichael was the owner of the car who testified that she hid the gun under the seat.  Patterson

24  testified that she spent time with petitioner shortly before his arrest and did not see or hear

25  petitioner with a gun.  Smith was the driver of the vehicle and testified that he never saw

26  petitioner with a gun.  Petitioner's wife, Danielle, testified that when he left their house that night

30

1   he did not have a gun.  (See Pet'r's Exs. 12, 14, 15, 16.)  However, none of those witnesses

2   directly rebutted the officers' testimony that petitioner told them he had a "baby gun."

3   Furthermore, the defense did not otherwise impeach the officers' testimony.

4          Again, while the court may question trial counsel's decisions in putting on the

5   details of petitioner's prior bad acts and in opening the door to character evidence, the decision to

6   have petitioner testify was a certainly within the realm of reasonable decisions.   In any event,

7   this court finds it is not reasonably likely the result would have been different had petitioner

8   stayed off the witness stand.  The state court's decision that petitioner did not suffer prejudice as

9   a result of any error is not contrary to, or an unreasonable application of, clearly established

10  federal law.  Accordingly, petitioner is not entitled to federal habeas relief with respect to this

11  aspect of his ineffective assistance of counsel claim.

12                  3.  Ineffective Assistance for Failing to Litigate Motion to Suppress

13         While it does not appear petitioner raised this claim before the state courts on

14  appeal or in his habeas petitions, respondents have not asserted that the claim is unexhausted.

15  Rather, respondents ask the court generally to reject petitioner's claims notwithstanding any

16  failure to exhaust under 28 U.S.C. § 2254(b)(2).  (Answer at 2:17-20.)  Since petitioner cannot

17  succeed on this claim, the court need not consider the exhaustion issue.  See Cassett v. Stewart,

18  406 F.3d 614, 624 (9th Cir. 2005) (a federal court considering a habeas petition may deny an

19  unexhausted claim on the merits when it is perfectly clear that the claim is not "colorable").

20         Petitioner argues only that counsel was ineffective for failing to argue the

21  suppression motion "in more strong details," and for failing to seek further review by moving for

22  a writ of mandate or for reconsideration.  (Am. Pet., Doc. No. 31-1 at 37, 42, and Doc. No. 31-2

23  at 15, 67-73, 101-103, 112; Reply (Doc. No. 39) at 17-18.)   Petitioner reiterates his arguments

24  regarding the motion to suppress.  He does not identify what his counsel failed to do in arguing

25  the motion.  Further, these are the same arguments that were raised, and rejected, on appeal and

26  in petitioner's state habeas proceedings.  (Compare Am. Pet., Doc. No. 31-1 at 38-39, with

                                                31

1   Resp'ts' Lodged Doc. No. 1 at 17-33 (Appellant's Opening Brief), Resp's' Lodged Doc. No. 7

2   at 9-19 (Sacramento County Superior Court Habeas Petition), Resp'ts' Lodged Doc. No. 10 at

3   33-49 and 94-104 (California Court of Appeal Habeas Petition), and Resp's' Lodged Doc. No.

4   12 at 8-18 and 39-47 (California Supreme Court Habeas Petition).)  Since petitioner has not

5   shown he would have been successful had counsel sought a writ of mandate or reconsideration,

6   petitioner has not shown he suffered any prejudice as a result of counsel's failure to act.  See

7   Strickland, 466 U.S. at 693-94.  Accordingly, he is not entitled to relief with respect to this aspect

8   of his claim.

9                    4. Ineffective Assistance and Trial Court Error re Jury Instructions

10                  Petitioner makes two claims that his trial counsel was ineffective by failing to

11   request jury instructions.[17]  First, petitioner argues that the jury should have been instructed to

12   find he possessed the gun based on evidence independent of his alleged admission and that the

13   jury should view evidence of his oral admission with caution.  (Resp's' Lodged Doc. No. 12 at

14   22-23; Am. Pet., Doc. No. 31-1 at 32-33, and Doc. No. 31-2 at 105-106.)  Respondents raise a

15   possible procedural default issue with respect to this claim.  However, since this claim is

16   meritless, the court need not address whether or not it is procedurally barred.  See Lambrix v.

17   Singletary, 520 U.S. 518, 525 (1997) (a district court may address the merits without reaching

18   procedural issues where the interests of judicial economy are best served by doing so); Franklin

19   v. Johnson, 290 F.3d 1223, 1232 (9th Cir.2002) ("Procedural bar issues are not infrequently more

20   complex than the merits issues presented by the appeal, so it may well make sense in some

21   instances to proceed to the merits if the result will be the same.").

22   _____

23       [17]  In an exhibit, petitioner seems to be making a third claim regarding the jury instruction
     on the definition of a confession. (Pet'r's Ex. 29.)  In his Reply, he cites some cases regarding
24   instructions that admissions of a party should be viewed with caution. (Reply, docket no. 39 at
     22.)  He states that it is "immaterial whether the admissions amount to confessions." (Id.)  It
25   appears petitioner is arguing that the jury should have received a cautionary instruction about
     their consideration of petitioner's admissions.  As stated in the text, since the jury was instructed
26   that they must find proof of each element of the crime independent of any admission, there is no
     prejudice from the absence of this instruction.

1        The trial court in fact gave the instructions petitioner claims that his trial counsel

2  should have requested.  In this regard, the trial court instructed the jury as follows: (1) "Evidence

3  of an oral confession of an oral admission of the defendant not made in court should be viewed

4  with caution;" and (2) "No person may be convicted of a criminal offense unless there is some

5  proof of each element of the crime independent of any confession or admission made by him

6  outside of this trial."  (3 RT 1201:27-28; 1202:1-3.)  Accordingly, petitioner cannot show either

7  trial court error or prejudice from any attorney error in failing to request these instructions.[18]

8        Petitioner next argues his counsel should have also requested that the following

9  instruction be given: "The mere fact that the defendant was present in a vehicle in which a

10  concealed firearm is found is insufficient by itself to convict [him] [her] of a violation of Penal

11  Code § 12025."  (Am. Pet., Doc. No. 31-2 at 55; Reply (Doc. No. 39) at 1-7, 23-24 .)  As stated

12  above, petitioner has not shown prejudice.  The trial court did instruct the jury that it was

13  required to find proof of each element of the crime independent of any confession or admission.

14  This is redundant of the jury instruction regarding "mere presence" or "corpus delicti" that

15  petitioner now claims his attorney was deficient in failing to request.  There is no reasonable

16  probability that had the instruction in question been requested and given that the result of

17  petitioner's trial would have been different.

18        Petitioner also claims the trial court erred by not instructing the jury sua sponte on

19  these points.  For the same reasons petitioner cannot show prejudice with respect to his

20  ineffective assistance of counsel claim in this regard, he cannot show that any alleged trial court

21  error in failing to five the jury instructions in question sua sponte had a "substantial and injurious

22

---

23       [18] Petitioner also makes a brief argument of jury bias based on the jury being exposed to

24  the evidence of his bad character.  (Am. Pet., Doc. No. 31-1 at 28.)  The effect of such evidence
on the jury has already been considered above in connection with petitioner's claim of ineffective

25  assistance of counsel for permitting the introduction of the bad character evidence.  Petitioner
also argues that the jury should have been instructed in keeping with the decision in People v.

26  Jenkins, 207 Cal. App. 2d Supp. 904 (Cal. Super. App. 1962).  (Id.)  However, that case
addresses issues of municipal law and has no relevance here.

1  effect or influence in determining the jury's verdict."  See Ortiz-Sandoval v. Gomez, 81 F.3d

2  891, 899 (9th Cir. 1996).  This claim too fails.

3                 5.  Ineffective Assistance for Failing to Present Potentially Meritorious Defenses

4            Petitioner does not explain how this claim differs from his other claims of

5  attorney error.  (E.g., Am. Pet., Doc. No. 31-1 at 33.)  Petitioner simply contends that his trial

6  counsel should have investigated "a potentially meritorious defense" of "not placing petitioner

7  [sic] character in question."  (Am. Pet., Doc. No. 31-2 at 95 (emphasis in original).)  Since such

8  claims have been addressed elsewhere herein, the court finds no basis to consider separately

9  petitioner's bare contention that his attorney failed to present potentially meritorious defenses.

10        D.  Officers Made False Reports

11            Petitioner argues the trial court erred in failing to consider that the police officers

12  who arrested him made inconsistent statements at the evidentiary hearing on the motion to

13  suppress evidence regarding the information they received about the direction in which the

14  burglary suspects fled.  (Am. Pet., Doc. No. 31-1 at 40.)  As described above in addressing

15  petitioner's claim based on the denial of his suppression motion, petitioner received a full an fair

16  hearing in connection with that motion.  This court is thus unable to consider petitioner's claims

17  regarding the search of the car and seizure of the gun underneath his seat inside.  Stone v. Powell,

18  428 U.S. at 494.[19]

19        E.  Invalidity of Prior Conviction

20            Petitioner argues that his prior conviction for manslaughter is invalid because his

21  trial attorney in that case was provided him ineffective assistance.  Specifically, petitioner claims

22

23         [19]  Petitioner also raises this contention that the officers made a "false report" in the

24  context of other claims.  He appears to argue that the allegedly false report should have been used
to impeach the officers' credibility.  (E.g., Am. Pet., Doc. No. 31-1 at 40.)  However, the court

25  notes that in his closing argument, petitioner's trial attorney did point out the officers' discrepant
testimony regarding which way Officers Bailey and Bullard were told the burglary suspects had

26  fled.  (3 RT 1171:13-20, 1172:26-1173:3.)  Since his trial counsel did in fact make the argument,
petitioner has no factual basis for an ineffective assistance of counsel claim on this ground.

1  that his former counsel, Linda Parisi, misled him into pleading guilty to manslaughter and assault

2  with a firearm.  The background for this claim is set out in a motion the defense in this case filed

3  to strike one of petitioner's prior convictions.  (CT 239-244.)  Briefly, in 1992, petitioner was

4  charged with homicide and assault with a firearm on another individual stemming from a gang

5  fight.  After the preliminary hearing, the "magistrate declined to hold the defendant to answer for

6  the assault allegation."  (CT 241:13.)  In December 1992, a jury convicted petitioner of murder.

7  (CT 245:23.)  This murder conviction was later overturned when petitioner obtained federal

8  habeas from the Ninth Circuit Court of Appeals for the.  (CT 245:23-24.)  Thereafter, petitioner

9  pled guilty to voluntary manslaughter and assault with a firearm.  (CT 241:20-22; 245:24-26.)

10  Petitioner now claims that attorney Parisi told him she would have the "strike" for the assault

11  stricken from his record.  (Am. Pet., Doc. No. 31-1 at 28, 130-132, and Doc. No. 31-2 at 28-31,

12  39-54.)

13          Petitioner's claim that his prior plea of guilty to voluntary manslaughter and

14  assault with a firearm should be vacated because it was entered unknowingly and involuntarily is

15  barred by the decision in Lackawanna v. Coss, 532 U.S. 394 (2001).  In Lackawanna the

16  Supreme Court held that where, as here, a petitioner's state court conviction is later used to

17  enhance a criminal sentence, "the defendant generally may not challenge the enhanced sentence

18  through a petition under § 2254 on the ground that the prior conviction was unconstitutionally

19  obtained." 532 U.S. at 403-04.  See also Gill v. Ayer, 342 F.3d 911, 919 n.7 (9th Cir. 2003).  The

20  Supreme Court has allowed a petitioner to challenge collaterally a prior conviction only "where

21  there was a failure to appoint counsel in violation of the Sixth Amendment." Id. at 404.  Because

22  it appears that petitioner was represented by counsel in connection with his prior guilty plea, the

23  "failure to appoint counsel" exception does not apply and he is precluded from collaterally

24  attacking that conviction through a § 2254 petition.  Id. at 406.

25  /////

26  /////

35

1        F.  Claims from Petitioner's Appellate Brief

2              As noted above, petitioner has attached a copy of his opening brief on his appeal

3    to his petition, labeling it "Ground for Relief/Writ of Habeas Corpus."  Many of the issues raised

4    in that appellate brief  mirror claims raised above and the court has considered the arguments

5    made on petitioner's behalf in the appellate brief when considering those claims.  However, the

6    appellate brief also contains some new and additional claims.  Assuming petitioner intends to

7    raise these new issues as claims in this federal habeas proceeding, and out of an abundance of

8    caution, the court addresses each of these additional claims below.

9              1.  State Law Claims

10             Petitioner's brief submitted before the state appellate court contains a number of

11   claims based solely on state law.  A state court's interpretation of state law does not present a

12   constitutional question reviewable in a federal habeas corpus action.  See Waddington v.

13   Sarausad, ___ U.S. ___, 129 S. Ct. 823, 832 n.5 (2009) ("we have repeatedly held that 'it is not

14   the province of a federal habeas court to reexamine state-court determinations on state-law

15   questions'"); Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state

16   law . . . binds a federal court sitting in federal habeas").  Accordingly, the following claims are

17   not appropriately raised in this action: (a)  the trial court abused its discretion when it denied

18   petitioner's pre-trial motion to dismiss one of his prior "strike" convictions (Am. Pet., Doc. No.

19   31-1 at 110-114, and Doc. No. 31-2 at 32-37, 121-122); (b) the trial court failed to award

20   petitioner the correct presentence conduct credits at the time of sentencing (Am. Pet., Doc. No.

21   31-1 at 126-127, and Doc. No. 31-2 at 125-126).[20]

22   /////

23   /////

24

25        [20]  It also appears the California Court of Appeal ruled in petitioner's favor on the claim
26   regarding the presentence conduct credits, thereby rendering any claim based on such an error
     moot.  (Resp't's Lodged Doc. No. 4 at 25.)

36

2.  <u>Petitioner's Sentence Violates the Eighth Amendment</u>

Petitioner argues that his indeterminate sentence of 25 years to life in prison imposed under California's Three Strikes Law violates the Eighth Amendment's ban on cruel and unusual punishment.  (Am. Pet., Doc. No. 31-1 at 115-124, and Doc. No. 31-2 at 84-90, 123-124.)  The California Court of Appeal rejected petitioner's argument in this regard, stating as follows:

> "The Eighth Amendment to the United States Constitution proscribes 'cruel and unusual punishment' and 'contains a "narrow proportionality principle" that "applies to noncapital sentences." ' (<u>Ewing v. California</u> (2003) 538 U.S. 11, 20 [155 L.Ed.2d 108 . . .] (lead opn. of O'Connor, J.), quoting <u>Harmelin v. Michigan</u> (1991) 501 U.S. 957, 996-997 [115 L.Ed.2d 836 ... ] .) That principle prohibits ' "imposition of a sentence that is grossly disproportionate to the severity of the crime" ' (<u>Ewing v.. California</u>, <u>supra</u>, 538 U.S. at p. 21 [155 L.Ed.2d at p. 117] (lead opn. of O'Connor, J.), quoting <u>Rummel v. Estelle</u> (1980) 445 U.S. 263, 271 [63 L.Ed.2d 382, 389, ... ] ), although in a noncapital case, successful proportionality challenges are " 'exceedingly rare.' " ( Ibid.)

> "A proportionality analysis requires consideration of three objective criteria, which include '(i) the gravity of the offense and the harshness of the penalty; (ii) the sentence imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.' (<u>Solem v. Helm</u> (1983) 463 U.S. 277, 292 [77 L.Ed.2d 637, 650 . . .].) But it is only in the rare case where a comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality that the second and third criteria come into play. (<u>Harmelin v. Michigan</u>, <u>supra</u>, 501 U.S. at p. 1005 [115 L.Ed.2d at pp. 871-872] (conc. opn. of Kennedy, J.).)

> "In <u>Ewing v. California</u>, <u>supra</u>, 538 U.S. 11 [155 L.Ed.2d 108], the United States Supreme Court's most recent case involving a claim of cruel and unusual punishment, the high court upheld a three strikes prison term of 25 years to life after the defendant committed grand theft by shoplifting three golf clubs, having been convicted previously of four serious or violent felonies. (<u>Id</u>. at pp. 17-20 [155 L.Ed.2d at pp. 115-117].)

> "Justice O'Connor stated in her lead opinion that '[r]ecidivism has long been recognized as a legitimate basis for increased punishment.' (<u>Ewing v. California</u>, <u>supra</u>, 538 U.S. at p. 25 [155 L.Ed.2d at p. 120].) In considering the gravity of the offense, the Supreme Court looked not only to Ewing's current

1   felony, but also to his long criminal felony history, stating '[a]ny
    other approach would fail to accord proper deference to the policy
2   that judgments find expression in the [L]egislature's choice of
    sanctions. In imposing a three strikes sentence, the State's interest
3   is not merely punishing the offense of conviction ... "[i]t is in
    addition the interest . . . in dealing in a harsher manner with those
4   who by repeated criminal acts have shown that they are simply
    incapable of conforming to the norms of society as established by
5   its criminal law." ' (Id. at p. 29 [155 L.Ed.2d at p. 122], quoting
    Rummel v. Estelle, supra, 44 U.S. at p. 276 [63 L.Ed.2d at p.
6   392].)" (Meeks, supra, 123 Cal.App.4th at pp. 707-708.)

7           Applying the proportionality test in light of Ewing, we
    conclude defendant's sentence of 25 years to life for being a felon
8   in possession of a firearm cannot be considered disproportionate to
    the crime in light of defendant's long history of committing serious
9   and violent criminal acts.  Although section 12021, subdivision
    (a)(1) is not listed as a violent felony under section 667.5,
10  subdivision (c), it is difficult to imagine a more serious nonviolent
    felony-an individual previously convicted of voluntary
11  manslaughter, assault with a deadly weapon, and assault on a peace
    officer found in possession of a loaded handgun in an area that has
12  a high crime rate, just three months after his release on parole.
    Defendant's sentence survives scrutiny under federal constitutional
13  law.

14  (Resp'ts' Lodged Doc. No. 4 at 20-22.)

15          In Lockyer v. Andrade, 538 U.S. 63 (2003), the Supreme Court found that in

16  addressing an Eighth Amendment challenge to a prison sentence, the "only relevant clearly

17  established law amenable to the [AEDPA] framework is the gross disproportionality principle,

18  the precise contours of which are unclear and applicable only in the 'exceedingly rare' and

19  'extreme' case." Id. at 73 (citing Harmelin v. Michigan, 501 U.S. 957, 1001 (1991); Solem v.

20  Helm, 463 U.S. 277, 290 (1983); and Rummel v. Estelle, 445 U.S. 263, 272 (1980)).  The

21  Supreme Court concluded in that case that two consecutive twenty-five years to life sentences

22  with the possibility of parole, imposed under California's Three Strikes Law following two petty

23  theft convictions with priors, did not amount to cruel and unusual punishment.  Andrade, 538

24  U.S. at 77; see also Ewing v. California, 538 U.S. 11 (2003) (holding that a sentence of twenty-

25  five years to life imposed for felony grand theft under California's Three Strikes law did not

26  violate the Eighth Amendment).

1          Following the decision in <u>Andrade</u>, the United States Court of Appeals for the

2   Ninth Circuit has held that a third strike sentence of twenty-five years to life in prison for a third

3   shoplifting offense, a "wobbler" under state law,[21] constituted cruel and unusual punishment.

4   <u>Ramirez v. Castro</u>, 365 F.3d 755 (9th Cir. 2004).  In so holding, the court relied upon the limited

5   and non-violent nature of the petitioner's prior criminal history and the fact that his only prior

6   period of incarceration had been a single one-year jail sentence.  <u>Id.</u> at 768-69.  Thereafter, in

7   <u>Rios v. Garcia</u>, 390 F.3d 1082 (9th Cir. 2004), the court distinguished the holding in <u>Ramirez</u>,

8   finding that the petitioner in <u>Rios</u> had a "lengthy criminal history," had "been incarcerated

9   several times," and that the prior strikes used to enhance his sentence had "involved the threat of

10   violence."  <u>Id.</u> at 1086.

11          In the present case, petitioner's sentence does not fall within the type of

12   "exceedingly rare" circumstance that would support a finding that his sentence violates the

13   Eighth Amendment.  Petitioner, with an extensive criminal record involving the use of firearms,

14   was convicted of possession of a firearm.  In view of the decisions noted above, petitioner's

15   sentence is not grossly disproportionate to those crimes.  <u>Cf.</u> <u>Harmelin</u>, 501 U.S. at 1004-05 (life

16   imprisonment without possibility of parole for possession of 24 ounces of cocaine raises no

17   inference of gross disproportionality).  Under these circumstances, the state courts' rejection of

18   petitioner's Eighth Amendment claim was neither contrary to, nor an unreasonable application of

19   clearly established federal law.

20          Petitioner also suggests that his trial counsel was ineffective for failing to object

21   to his sentence as cruel and unusual punishment.  (Am. Pet., Doc. No. 31-1 at 124-125, and Doc.

22   No. 31-2 at 90.)  However, petitioner has not suggested, let alone shown, any prejudice flowing

23   from this alleged error on the part of counsel.  Even had defense counsel objected, that objection

24   would have failed under the Eighth Amendment for the reasons set forth above.  Moreover, as

25

26        [21] A "wobbler" is an offense that can be punished as either a misdemeanor or a felony under applicable law.  <u>See</u> <u>Ferreira v. Ashcroft</u>, 382 F.3d 1045, 1051 (9th Cir. 2004).

1  demonstrated by the California Court of Appeal's rejection of this claim, any such objection

2  would have failed under state law as well.  (See Resp'ts' Lodged Doc. No. 4 at 22-24.)

3         G.  Inappropriate Settlement Considerations

4              In his request for "Consideration" filed March 24, 2008, petitioner raises for the

5  first time an argument that he was "sentence[d] for winning my appeal.  Not for a crime I

6  committed."  (Consideration (Doc. No. 55) at 2.)  In support of this contention petitioner has

7  attached a declaration from his trial attorney, Robert Saria.  Therein, attorney Saria describes

8  settlement discussions he had with the District Attorney's Office in an attempt to negotiate a

9  determinate sentence for petitioner.  Mr. Saria stated that he was "informed that the fact that Mr.

10  Wildee had sustained a reversal of a prior conviction was a factor that supported the decision not

11  to make an [sic] determinate sentencing offer in the instant case."  (Jan. 8, 2008 Decl. of Robert

12  Saria (Doc. No. 55) at 5, ¶ 7.)

13             This court cannot consider this new claim, raised long after the petition was filed.

14  See Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) (a reply is not the proper

15  pleading to raise additional grounds for relief).  Even if the claim were raised properly, it is

16  meritless.  It is well-established that criminal defendants have no constitutional right to a plea

17  bargain.  Weatherford v. Bursey, 429 U.S. 545, 561 (1977); King v. Brown, 8 F.3d 1403, 1408

18  (9th Cir. 1993);  United States v. Anderson, 993 F.2d 1435, 1439 (9th Cir. 1993).  Accordingly,

19  any claim by petitioner of entitlement to federal habeas relief due to inappropriate settlement

20  negotiations should be rejected.

21  III.  Request for Evidentiary Hearing

22             Petitioner also requests that the court conduct an evidentiary hearing on several of

23  his claims.  Pursuant to 28 U.S.C. § 2254(e)(2), an evidentiary hearing is appropriate only under

24  the following circumstances:

25             (e)(2) If the applicant has failed to develop the factual basis of a
             claim in State court proceedings, the court shall not hold an
26             evidentiary hearing on the claim unless the applicant shows that-

40

1      (A) the claim relies on-

2      (i) a new rule of constitutional law, made retroactive to cases on
       collateral review by the Supreme Court, that was previously
3      unavailable; or

4      (ii) a factual predicate that could not have been previously
       discovered through the exercise of due diligence; and
5

6      (B) the facts underlying the claim would be sufficient to establish
       by clear and convincing evidence that but for constitutional error,
       no reasonable fact finder would have found the applicant guilty of
7      the underlying offense[.]

8    Under this statutory scheme, a district court presented with a request for an

9 evidentiary hearing must first determine whether a factual basis exists in the record to support a

10 petitioner's claims and, if not, whether an evidentiary hearing "might be appropriate." Baja v.

11 Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999). See also Earp v. Ornoski, 431 F.3d 1158, 1166

12 (9th Cir. 2005); Insyxiengmay v. Morgan, 403 F.3d 657, 669-70 (9th Cir. 2005). A petitioner

13 requesting an evidentiary hearing must also demonstrate that he has presented a "colorable claim

14 for relief." Earp, 431 F.3d at 1167 (citing Insyxiengmay, 403 F.3d at 670, Stankewitz v.

15 Woodford, 365 F.3d 706, 708 (9th Cir. 2004) and Phillips v. Woodford, 267 F.3d 966, 973 (9th

16 Cir. 2001)). To show that a claim is "colorable," a petitioner is "required to allege specific facts

17 which, if true, would entitle him to relief." Ortiz v. Stewart, 149 F.3d 923, 934 (9th Cir. 1998)

18 (internal quotation marks and citation omitted).

19    The court concludes that no additional factual supplementation is necessary in this

20 case and that an evidentiary hearing is not necessary or appropriate with respect to any of

21 petitioner's claims. The facts alleged in support of petitioner's claims, even if established at an

22 evidentiary hearing, would not entitle him to federal habeas relief for the reasons set forth above.

23 Therefore, petitioner's request for an evidentiary hearing should be denied.

24             CONCLUSION

25    Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

26 a writ of habeas corpus be denied.

1    These findings and recommendations are submitted to the United States District

2    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

3    one days after being served with these findings and recommendations, any party may file written

4    objections with the court and serve a copy on all parties.  Such a document should be captioned

5    "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

6    shall be served and filed within seven days after service of the objections.  The parties are

7    advised that failure to file objections within the specified time may waive the right to appeal the

8    District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

9    DATED: November 2, 2010.

10

11   _____

12   DALE A. DROZD
     UNITED STATES MAGISTRATE JUDGE

13   DDAD1:7
     wildee 163.hc

14

15

16

17

18

19

20

21

22

23

24

25

26